1. TAXATION—PERSONAL PROPERTY—TAXPAYER'S ACCOUNTING TREATMENT—WRONG PRINCIPLE.

> Taxpayer is entitled to have its accounting treatment as to valuation of its personal property considered by the assessor, even though he ultimately rejects it, and complete disregard of such contention is clearly an application of wrong principles (Const 1963, art 6, § 28).

2. SAME—STATE TAX COMMISSION—CONTESTED ASSESSMENT—EVIDENCE.

> Findings of State tax commission in contested real property assessment of hotel that real property had a certain assessed valuation, *held,* supported by evidence in the record, where tax commission valuation was supported by the testimony of a city assessor and the report and testimony of tax commission's field examiner who prepared the commission's report, as against evidence produced by the taxpayer that the real property and some personal property had recently been purchased for less than the tax commission valuation of the real property alone, that shortly thereafter a 1/3 stock interest in the corporate taxpayer was sold upon the same basis, that another portion of the same building was sold at a low price, that experts testified as to their opinion of true cash value as lower than the assessed value, that the property had been rejected by 2 knowledgeable investors when offered at a higher price, and that the property was valued for mortgage purposes at a figure which tended to establish the value contended for by the taxpayer.

REFERENCES FOR POINTS IN HEADNOTES

[1] 51 Am Jur, Taxation § 696 *et seq.*
[2-5, 7, 8] 51 Am Jur, Taxation § 722 *et seq.*
[6] 51 Am Jur, Taxation § 770 *et seq.*

3. SAME—STATE TAX COMMISSION FINDINGS—EVIDENCE.

The State tax commission's finding in challenged assessment of real and personal property is not reversed, in the absence of fraud, errors of law, or application of wrong principles, where there is testimony to support commission's findings.

4. SAME—PERSONAL PROPERTY—TAX COMMISSION REPORT—CROSS-EXAMINATION.

Taxpayer who wished to demonstrate errors of law or the use of wrong principles by the maker of a fieldman's report to the State tax commission on personal property valuation should have demanded an opportunity to cross-examine the person who made the report.

5. SAME—PERSONAL PROPERTY—COMPETING EVIDENCE.

State tax commission had the duty to consider the testimony and determine from it the proper valuation of personal property in a case where the commission had a report from its own fieldman, and heard competing testimony from witnesses produced by taxpayer.

6. SAME—STATE TAX COMMISSION ORDERS—APPEAL.

Taxpayer does not have appeal as a matter of right from orders of the State tax commission (Const 1963, art 6, § 28).

DISSENTING OPINION.

DETHMERS, C. J., and SOURIS and O'HARA, JJ.

7. TAXATION—REAL PROPERTY—ASSESSMENT—CASH VALUE—EVIDENCE.

*Value of taxable property set by State tax commission for tax assessment purposes at level grossly in excess of price paid by taxpayer in an almost contemporaneous sale was error where taxpayer offered substantial evidence to support its position that the purchase price was the true cash value of property and the only other evidence of value was testimony by city and State tax commission appraisers regarding their use of mechanical valuation techniques to determine the challenged assessments, and neither testified that his computations accurately measured the properties' true cash values.*

8. SAME—CONSTITUTION—ASSESSMENT—CASH VALUE.

*Constitution provides that real and tangible personal property be assessed on the basis of true cash value (Const 1963, art 9, § 3).*

Appeals from Court of Appeals. Submitted June 7, 1967. (Calendar No. 5, Docket Nos. 51,454, 51,-554.) Decided April 1, 1968. Rehearing granted May 6, 1968. See 381 Mich 717.

Pantlind Hotel Company, a Michigan corporation, taxpayer, appealed its personal property assessment by defendant City of Grand Rapids for 1965 to the State Tax Commission. Assessment affirmed by commission. Taxpayer's application for leave to appeal to the Court of Appeals denied. Taxpayer appeals to Supreme Court by leave granted. (Docket No. 51,454.) Affirmed.

Pantlind Hotel Company appealed its 1964 real property assessment by defendant City of Grand Rapids to the State Tax Commission. Assessment set by State Tax Commission after supplementary hearing pursuant to order of the Court of Appeals in *Pantlind Hotel Company* v. *State Tax Commission,* 3 Mich App 170. Taxpayer appealed to the Court of Appeals, and appeals to Supreme Court prior to decision in the Court of Appeals pursuant to GCR 1963, 852. (Docket No. 51,554.) Consolidated with Docket No. 51,454. Affirmed.

*Honigman, Miller, Schwartz & Cohn* (*John Sklar,* of counsel), for Pantlind Hotel Company.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *T. Carl Holbrook* and *Richard R. Roesch,* Assistant Attorneys General, for Michigan State Tax Commission.

*Steven L. Dykema,* City Attorney, and *George O. Walters,* Assistant City Attorney, for the City of Grand Rapids.

ADAMS, J.   Several of the questions raised in
*Fisher-New Center Company* v. *State Tax Commission,* 380 Mich 340, are also raised upon this appeal.
In this case, however, there is no disagreement between the city of Grand Rapids and the Michigan
State tax commission.   There is also no question as
to the prevailing level of assessments.   Taxpayer's
contentions go primarily to the competency of the
evidence relied upon by the commission and the
overwhelming weight of the evidence produced by
the taxpayer.

## I. POSTURE OF THE CASE.

Two consolidated appeals are involved: First,
taxpayer's real estate assessment for 1964 fixed by
the State tax commission at $635,500, and, second,
its personal property assessment for 1965 confirmed
by the State tax commission in the amount of $148,-
600.

The assessor for the city of Grand Rapids fixed
for 1964 the assessed value of the Pantlind Hotel at
$1,019,000.   It was reduced by the board of review
to $850,000.   The taxpayer filed a complaint with
the State tax commission.   A hearing was held on
September 28, 1964.   The commission does not have
an official reporter to record its hearings.   The tax-
payer attempted to provide a stenographer but the
transcript was unsatisfactory.   The taxpayer then
filed an affidavit of Jason L. Honigman, dated Oc-
tober 14, 1964, "to record the substance of the pro-
ceedings."

The report of the commission's staff was not avail-
able on September 28, 1964, and was not filed with
the commission until November 13, 1964.   The tax-
payer received a copy on November 18, 1964, and
on November 19, 1964, requested a further hearing
to cross-examine the person who prepared the staff

report. The request was denied and on December 11, 1964, the commission proceeded to make a determination and ordered the assessment on the Pantlind Hotel reduced to $635,500, which order was issued January 15, 1965. The taxpayer's application for leave to appeal to the Court of Appeals was granted. The Court of Appeals found no error of law in the method applied by the commission in determining the amount of the assessment but remanded the case for further hearing because of lack of administrative due process. *Pantlind Hotel Company* v. *State Tax Commission* (1966), 3 Mich App 170.

In the meantime, on April 16, 1965, taxpayer claimed an appeal to the commission from the 1965 real estate and personal property assessment. The commission denied the appeal from the real property assessment for 1965, in accordance with the provisions of CL 1948, § 211.152, as amended (Stat Ann 1960 Rev and Stat Ann 1965 Cum Supp § 7.210), but accepted the appeal of the personal property assessment.

A personal property investigation was made by commission staff members and a fieldman's report was filed. Hearing was held on November 4, 1965, and testimony taken. The commission sustained the city's assessment of taxpayer's personal property at $148,600 for 1965. Taxpayer's application for leave to appeal to the Court of Appeals was denied. Application for rehearing was also denied. Taxpayer then filed application for leave to appeal to this Court. On June 13, 1966, leave to appeal from the order of denial entered by the Court of Appeals in the personal property assessment case was granted.

An additional hearing on the 1964 real property assessment was held by the commission on May 16, 1966. On June 21, 1966, the commission affirmed the

assessment for 1964 of taxpayer's real property in the amount of $635,500. Taxpayer filed application for leave to appeal to the Court of Appeals, and while the application was pending, on July 28, 1966, filed an application with this Court for leave to appeal prior to decision by the Court of Appeals and to consolidate such appeal with the pending appeal in the personal property assessment case. This application was also granted.

## II. The Assessment of the Real Property.

The first State tax commission hearing on the real property assessment was held on September 28, 1964. It was conducted by Robert L. Purnell, the commission chairman. The city of Grand Rapids was represented by Clarence Thielman, city assessor. The taxpayer was represented by Jason L. Honigman. This is the hearing at which no formal record was made and as to which the taxpayer subsequently furnished an affidavit undertaking "to record the substance of the proceedings."

According to the Honigman affidavit, the Pantlind Hotel is a 10-story structure in downtown Grand Rapids covering an entire city block. On May 27, 1963, the property was sold by National Building Corporation to taxpayer, Pantlind Hotel Company, a Michigan corporation. The purchase price consisted of $50,000 paid for the owner's equity, the building at the time being subject to a mortgage having an unpaid balance of approximately $590,000. The total purchase price of $640,000 covered land, building, furniture and equipment. The taxpayer recorded the purchase price by allocating $532,438.87 to the land and buildings, and $94,000 to personal property.

The Pantlind Hotel property had been offered over a period of time prior to its purchase, but no buyer

had appeared. Ben Silberstein was one of the stockholders of National Building Corporation and an owner and operator of outstanding hotels in this country. A $50,000 offer to sell Silberstein the owner's equity was rejected.

Immediately following purchase of the Pantlind Hotel properties, the sole stockholder of taxpayer sold a 32% interest to three Roberts brothers who had been former employees of the hotel. The stock was sold to them at stockholder's cost basis.

After acquisition of the hotel properties, taxpayer acquired property adjacent to and structurally a part of the Pantlind Hotel, owned by the Old Kent Bank, for $137,500. Taxpayer attempted to relate the price for this property to its assessed value of $341,300, claiming that it showed an overassessment at a ratio of 250% of actual market value as established by the sale price. Taxpayer claimed as to the remaining hotel property, acquired from National Building Corporation, that the overassessment by the Grand Rapids board of review was at the ratio of 160% to the actual purchase price.

Clarence Thielman, the city assessor, had assessed taxpayer's property on a basis of unit cost of reproduction which was comparable to that used for other buildings in the downtown area of Grand Rapids. Mr. Thielman made the statement that real property in the city of Grand Rapids was assessed at a level of one third of actual market value. The Honigman affidavit ends with taxpayer's contention that its property should have been assessed at approximately one third of the purchase price which would give an assessed valuation of $175,000.

The commission's staff report, dated November 13, 1964, disclosed that the land portion of the Pantlind Hotel property was appraised at a current value of $432,000, and that the building was appraised by

the use of Boeckh's Manual* as having a current value of $1,340,000. The building appraisal was determined on the cubic foot content at a unit cost per cubic foot of $1.33. This produced the rounded-off sum of $4,972,131 and was designated on the schedule as being the base value. The reproduction cost or base value was reduced by 55% for depreciation and by 40% of that resultant amount for economic obsolescence. The appraiser's true cash value for the property was determined to be $1,342,475. The land value appraisal of $432,000 and the building value appraisal of $1,342,475 produced $1,774,-475 which was without explanation reduced to $1,772,060.

The staff report also undertook to make an appraisal based upon income from the property, using the hotel's operations for 1961, 1962 and 1963, years prior to purchase by the taxpayer. The calculation of true cash value by use of the capitalization of income method was $1,603,296.

A stenographic transcript was made at the supplemental hearing on May 16, 1966. Eugene Hall, a member of the commission's staff and the field examiner who prepared the staff report, was called and cross-examined by taxpayer's counsel. The questions asked were not for the purpose of challenging the appraisal figures *per se* which had appeared in the staff report. The questioning was an effort to discredit Hall and to show his incompetency as an appraiser. Hall was interrogated about the relevancy of the reproduction cost method and whether it had any bearing at all on the price people would pay for a commercial property of the type of the Pantlind Hotel. An attempt was made to demonstrate that Hall could not qualify as an expert.

---

* Boeckh's Manual of Appraisals (1963, E. H. Boeckh & Associates, Inc., Washington, D. C.).

Next, Hall was examined as to his use of the capitalization of income method. Finally, he was asked what consideration he gave to the actual sale of the property to the taxpayer. He stated it did not have any bearing on the amount of his valuation because it was not thought to represent market value.

Harold Berry testified that he was the operating vice-president of International Hotels, Inc. He stated that he had made an examination of the Pantlind Hotel property and of the operating records for the years 1961, 1962 and 1963. He gave his opinion that the economic value or the value people would pay for the business, including good will and personal property, was about $625,000. He attributed about 25% of the estimated value to personal property.

Jason L. Honigman testified. He gave an account of the difficulty the taxpayer had in obtaining a mortgage on the property. The Old Kent Bank refused a loan, as did the City National Bank in Detroit and a number of mortgage brokers in Detroit. Finally a loan was obtained from the Manufacturers National Bank of Detroit in the amount of $550,000 with Honigman giving a personal mortgage for anything above $375,000. Honigman further testified that the present owners acquired the 59-foot corner property owned by the Old Kent Bank. Part of the Pantlind Hotel was constructed over the top of the bank corner. The purchase price for the bank corner paid by the taxpayer was $137,500. Based upon the assessed values of the two properties and applying the price paid for the bank corner in that proportion would result in a selling price for the Pantlind Hotel of $445,000.

Honigman offered the affidavits of Allen B. Kramer, a hotel operator, and Herbert Daverman, an architect, in which they stated they had investigated

purchase of the Pantlind Hotel for $800,000 and determined the property was not worth more than $600,000. This concluded the record made by the taxpayer at the second hearing.

Clarence Thielman, city assessor for the city of Grand Rapids, was called as a witness and examined by Mr. Roesch, an assistant attorney general. Thielman said that he would roughly estimate the value of the Pantlind Hotel at around $2,000,000, or so, in 1963. He placed an assessed value on it of $1,019,000. He arrived at the amount of his assessment largely through replacement cost less depreciation, less obsolescence. He tried to use the other recognized approaches but there was only one other sale of a hotel property in Grand Rapids and that was back about five years. It would be very difficult to use the capitalization method because there was very little income at the time from the Pantlind Hotel. This concluded the testimony on the second hearing.

### III. Hearing on the Personal Property Assessment.

After appeal to the State tax commission of taxpayer's 1965 personal property assessment, the commission caused an investigation, including an audit and appraisal, to be made of appellant's property. Copy was made available to appellant. There is no specific identification in this record of the investigation. A fieldman's report with attachments appears to supply the results of the investigation and audit and contains an appraisal based upon three separate estimates. The summations are as follows:

"a. Appraisal based principally on audit of furniture and fixture account in firm's general ledger. Total estimated value this approach—$424,980.

"b. Appraisal based principally on a study of hotel operations by a public accounting and auditing

firm using book values before depreciation. Total estimated value this approach—$497,055.

"c. Appraisal based principally on a study of hotel operations by a public accounting and auditing firm using book values after depreciation. Total estimated value this approach—$520,335."

A hearing was held by the commission in Grand Rapids on November 4, 1965. Taxpayer made no attempt to cross-examine the member or members of the commission staff, whoever they might be, concerning the contents of the fieldman's report or the nature and extent of the investigation and audit. The only witnesses called were two of the Roberts brothers and the city assessor.

J. W. Roberts, president and general manager of the Pantlind Hotel Company, testified as to his opinion of the true cash value of the personal property. He assigned a value as of December 31, 1964, of $160,500.

Charles Roberts, vice-president of the Pantlind Hotel Company, undertook to explain and compare the figures furnished to the commission with those supplied to the Grand Rapids board of review.

The testimony of Clarence M. Thielman, city assessor of Grand Rapids, need not be reviewed except to note that he testified he completely disregarded the allocation by taxpayer on its books of the sum of $94,000 to cover personal property. This was an application of wrong principles which, had it been followed by the State tax commission, would have been clearly erroneous. The taxpayer was entitled to have its contentions considered by the assessor even though he ultimately rejected them.

On December 14, 1965, the commission's decision and order were entered, directing that the assessment in the amount of $148,500 [$148,600] be placed upon the assessment roll as the true and lawful value

for taxation purposes of the taxpayer's personal property.

## IV. IN SUMMARY.

Taxpayer contends that the evidence it produced is the only competent evidence which was before the tax commission and upon which the commission could base its decisions. Because of the informal nature of real or personal property assessment hearings, either at the local or State level, ordinarily no record is kept and rather liberal rules of evidence are followed. In this case, at the first hearing on the taxpayer's real property assessment, no satisfactory record was made. An affidavit by Jason L. Honigman purported to set forth the proceedings and was submitted by him to the commission with the request that it be filed as a part of the record. At the second hearing, Honigman identified and offered affidavits by two individuals which were also received. At the hearing on the personal property, the fieldman's report of the commission was made a part of the proceedings even though the fieldman himself did not testify and was not even identified. No objection has been made by any of the parties to the admissibility of this evidence.

The taxpayer contends that the evidence it produced is so overwhelming it must be accepted. Taxpayer showed (1) a sale of the real and personal property for $626,438.87, (2) a resale of a one-third interest upon the same basis as the first sale, (3) a sale of a portion of the same building at a low figure, (4) uncontradicted expert opinion testimony with regard to the true cash value, (5) the rejection of the purchase of the property at a higher price by two knowledgeable investors, and (6) a valuation of the property for mortgage purposes which

tended to establish the value contended for by the taxpayer. This was a strong case, indeed!

On the other hand, the valuation by the tax commission is supported by the testimony of the Grand Rapids city assessor and the report and testimony of Eugene Hall, a member of the tax commission's staff and the field examiner who prepared the commission's report. There is testimony to support the findings of the commission. In the absence of fraud, errors of law or application of wrong principles, we will not reverse.

The situation with regard to the personal property assessment is again one of the taxpayer producing testimony to support its contentions. However, the taxpayer, as to the personal property, did not elect to cross-examine the person on the staff of the tax commission who prepared the fieldman's report. That report, with its three approaches to valuation of the personal property, was before the commission. If the taxpayer wished to demonstrate errors of law or use of wrong principles by the maker of the report, it should have demanded an opportunity to cross-examine. Again, as to the personal property valuation, there was competing evidence before the commission. It was for the commission to consider the testimony and determine therefrom the proper valuation. In the absence of fraud, errors of law or application of wrong principles, we find no error.

Lastly, taxpayer argues that under the provisions of Const 1963, art 6, § 28, orders of the State tax commission may be appealed as a matter of right. This issue appears moot in view of the leave granted in the instant appeal but we deem it appropriate to observe, nonetheless, that taxpayer's contention in this respect does not have the support of this Court. *Evans* v. *United States Rubber Company* (1967), 379 Mich 457.

.

The decisions (1) of the Court of Appeals with regard to the personal property assessment and (2) of the State tax commission with regard to the real property assessment are affirmed. Costs to appellees.

Kelly, Black, T. M. Kavanagh, and Brennan, JJ., concurred with Adams, J.

Souris, J. (*dissenting*). In this case, as in *Fisher-New Center Company v. State Tax Commission*, 380 Mich 340, decided this date, the State tax commission established the value of taxable property for tax assessment purposes at a level grossly in excess of the price paid therefor by the taxpayer in a virtually contemporaneous sale. The Pantlind Hotel, including its land, building and personal property, was purchased in May of 1963 for $626,438. The commission, on the other hand, claims the true cash value of the real property to have been $1,772,060 for determining the 1964 assessment and the true cash value of the personalty to have been $424,463[1] for determining the 1965 assessment.

This record discloses that the commission computed its value of the real property by separately computing the value of the land on a per foot basis, the value of the hotel by its reproduction cost less depreciation and obsolescence, and the value of the personalty by its original cost (to the original purchaser, and not to taxpayer) less depreciation and obsolescence. It also discloses that the commission disregarded the price actually paid by the taxpayer for the property involved ostensibly because the cor-

---

[1] Of this figure, a minor part represents inventory, stores and supplies and other personalty purchased after the taxpayer's acquisition of the hotel.

porate taxpayer was, at the time of purchase, solely owned by the wife of one of the principal stockholders[2] of the corporate seller.

The taxpayer offered substantial evidence to support its claim that its purchase price was the true cash value of the property—that it could not be sold for more than the price actually paid. I do not suggest that the commission is bound to accept such evidence when it is rebutted or when other evidence of true cash value is offered, but in this case there was no evidence offered to suggest that the sale was other than at arm's length, and there was no other competent evidence of true cash value. The only other evidence of value in this record was the testimony of the city and State tax commission appraisers regarding their use of the mechanical valuation techniques used to determine the challenged assessments. Neither of these witnesses testified, nor did anyone else, that his computations accurately measured the properties' true cash values.

All this record discloses, therefore, is that the commission's valuations were computed in accordance with techniques it has ordered used for such purposes and that the resulting values were grossly larger than the price commanded by the properties in a virtually contemporaneous sale. I do not understand how it can be said from such a record that this taxpayer's property was assessed on the basis of true cash value as our Constitution requires. Const 1963, art 9, § 3.

I would reverse and remand for rehearing before the State tax commission in accordance with the hearing procedures suggested in my opinion in *Fisher-New Center Company* v. *State Tax Commis-*

---

[2] Mr. Jason Honigman and members of his family owned a 35% interest in the corporation which sold the hotel to plaintiff corporation, all of the stock of which was owned by his wife.

*sion*, 380 Mich 340.  Plaintiff should be allowed to tax its costs.

DETHMERS, C. J., and O'HARA, J., concurred with SOURIS, J.