ALLIED SUPERMARKETS, INC., v. STATE TAX COMMISSION.

DISSENTING OPINION.

T. M. KAVANAGH and ADAMS, JJ.

1. TAXATION—ASSESSMENTS—TRUE CASH VALUE.
   The State Constitution and taxation statutes require that property be assessed for taxation on the basis of its true cash value (Const 1963, art 9, § 3; CL 1948, § 211.24, as amended by PA 1963, No 66).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 51 Am Jur, Taxation §§ 650, 696.
[2–4] 51 Am Jur, Taxation §§ 701, 706, 708, 709.
[5] 51 Am Jur, Taxation §§ 696, 697, 725, 767, 770.
[6] 51 Am Jur, Taxation §§ 767, 770, 771.
[7, 8] 51 Am Jur, Taxation §§ 767, 770.
[9] 51 Am Jur, Taxation §§ 696, 701.
[10] 51 Am Jur, Taxation §§ 763, 767, 770.

2. SAME—ASSESSMENTS—TRUE CASH VALUE—DETERMINATION.

*Three acceptable approaches to the determination of true cash value of real property for purposes of assessment for taxation are: (1) fair market value or the price which could be obtained at a private sale but not at forced or auction sale, (2) replacement or reproduction cost, and (3) capitalization of income (Const 1963, art 9, § 3; CL 1948, § 211.24, as amended by PA 1693, No 66).*

3. SAME—ASSESSMENTS—TRUE CASH VALUE—METHODS—REVIEW.

*True cash value for purposes of assessment for taxation should be based on one or more of the recognized methods for its determination; the method or methods to be used is a matter for decision at the assessing level and, if supported by the record, will not be subject to judicial review (Const 1963, art 9, § 3; CL 1948, § 211.24, as amended by PA 1963, No 66).*

4. SAME—ASSESSMENTS—FAIR MARKET VALUE.

*Fair market value is not conclusively determinative of true cash value but is one method of arriving at true cash value; the choice of method to be used is a matter for discretion at the assessing level (Const 1963, art 9, § 3; CL 1948, § 211.24, as amended by PA 1963, No 66).*

5. SAME—ASSESSMENT—STATE TAX COMMISSION—FINDINGS.

*Findings of State tax commission held, not based on errors of law or application of wrong principles and supported by competent, material, and substantial evidence on the whole record where evidence established that tax commission field examiner employed all 3 accepted methods in arriving at his determination of true cash value for purposes of establishing assessments on plaintiff's properties (Const 1963, art 6, § 28; CL 1948, § 211.24, as amended by PA 1963, No 66).*

6. SAME—ASSESSMENTS—REVIEW—ERROR OF LAW.

*The Supreme Court has no right to substitute its judgment of the facts for the judgment of the State tax commission except where there is shown fraud, errors of law, or the application of wrong principles in the assessment of property for taxation; in the absence of fraud, error of law, or the adoption of wrong principles no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation (Const 1963, art 6, § 28).*

7. SAME—ASSESSMENT—STATE TAX COMMISSION—CONSTITUTIONAL LAW.

The constitutional provision foreclosing judicial review of tax assessments except in cases of fraud, error of law, or adoption of wrong principles is based upon the reasoning that tax assessments are an annual decision-making process and governmental units need to be reasonably assured of their tax revenues, and any change in this provision cannot come from the courts but must be by constitutional amendment (Const 1963, art 6, § 28).

8. SAME—CONSTITUTIONAL LAW—INTENT—STATE TAX COMMISSION—ASSESSMENT—ADMINISTRATIVE PROCEDURES.

The intent of the constitutional provision giving the State tax commission power to finally determine tax assessment is to preserve and protect all rights of the commission which previously existed but not to allow the court to substitute its judgment and become an assessor and thereby allow municipal tax machinery to become clogged with the tools of administrative procedures review which would bring both State and municipal tax machinery to a grinding halt (Const 1963, art 6, § 28).

OPINION OF THE COURT.

9. TAXATION — ASSESSMENT — TRUE CASH VALUE — FAIR MARKET VALUE.

True cash value as defined by the general property tax act is the usual selling price that could be obtained at the time of assessment but not the price that could be obtained at a forced or auction sale (Const 1963, art 9, § 3; CL 1948, § 211-.24, as amended by PA 1963, No 66, § 211.27).

10. SAME—ASSESSMENT—EVIDENCE.

Plaintiff taxpayer should be allowed a rehearing before State tax commission and a recomputation of valuation and assessment of its property within the range of competent testimony where findings of State tax commission were not supported by competent material evidence on the whole record (Const 1963, art 9, § 3; CL 1948, § 211.24, as amended by PA 1963, No 66, § 211.27).

Appeal from Court of Appeals, Division 1, Quinn, P. J., and T. G. Kavanagh and McGregor, JJ., denying application for leave to appeal from State tax commission. Submitted November 13, 1968.

(Calendar No. 1, Docket Nos. 51,838–51,840.)  Decided May 5, 1969.  Rehearing denied July 31, 1969.

The City of Detroit placed real estate assessments for 1966 on 3 warehouses owned by Allied Supermarkets, Incorporated, and each assessment was affirmed by the city's board of review.  Plaintiff taxpayer appealed to State tax commission.  Assessments modified.  Application of plaintiff for leave to appeal denied by Court of Appeals.  Cases consolidated on appeal.  Plaintiff appeals.  Reversed and remanded.

*Honigman, Miller, Schwartz & Cohn* (*John Sklar*, of counsel), for plaintiff.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *William D. Dexter* and *Richard R. Roesch*, Assistant Attorneys General, for defendant State Tax Commission.

*Robert Reese*, Corporation Counsel, *Julius C. Pliskow* and *Arthur Yim*, Assistant Corporation Counsel, for defendant City of Detroit.

T. M. KAVANAGH, J. (*dissenting*).  Allied Supermarkets, Inc., appeals from decisions of the Michigan State tax commission establishing real estate assessments for 1966 on three warehouse buildings located in the city of Detroit and from the Court of Appeals' denial of leave to appeal from those decisions.  Plaintiff contends that the determinations of the State tax commission should be set aside because they are based on errors of law and the adoption of wrong principles.

Plaintiff operates a chain of supermarkets in the Detroit area.  These supermarkets are serviced by

its Harrington and Meadowdale warehouses. The use of the third warehouse, located at Greenfield and Fullerton, was discontinued by Allied some years ago and has since been subleased to other tenants. All three buildings have been in use as warehouses for many years. Each assessment made on the properties represents a separate case. They were consolidated for the purposes of this appeal.

The first case involves the Harrington property which is an industrial warehouse used for food storage and warehousing. Plaintiff, using an appraisal made by its real estate department, fixed the market value of the property at $500,000. The city of Detroit made an assessment of $397,750; and this assessment was affirmed by the city's board of review.

Appealing to the State tax commission, plaintiff further contended that the current market value, using solely the capitalization of income approach recommended by its expert witness, is $554,000.

The State tax commission, after a full investigation and hearing, found that:

"The commission staff's method of valuation consisted of an appraisal using the reproduction cost approach to value which the staff adjusted original cost by various depreciation and obsolescence factors to arrive at a current adjusted reproduction cost for the building of $663,418. Land was appraised by comparison to similar properties which have sold recently resulting in a current true cash value of $118,209. Land improvements were appraised at a current adjusted reproduction cost of $23,694. These improvements consisted of railroad spur, parking bumpers, blacktop paving, concrete paving, storage tanks, and fencing. The current true cash value of land, land improvements and buildings is $805,321 based upon a reproduction cost approach to value. *The commission's staff did an additional appraisal based upon the capitalization of*

*income approach to value which resulted in a current true cash value of $795,580, which value is reasonably close to and substantiates the reproduction cost appraisal.* * * *

"After these findings of facts and the consideration of all the information contained therein, it is determined, in the opinion of the commission, that the true cash value is $805,321 and the assessment level is 45.25%[1] of true cash value. Therefore, appellant's assessment should be $364,410. Since appellant's assessment is $397,750 *it is clearly apparent that the assessment is significantly above and is not in accordance to the true cash value,* reduced to the local assessment level and the true cash value of all other real and personal property within the city of Detroit, reduced to such assessment level." (Emphasis added.)

Accordingly, the State tax commission ordered the assessment reduced to $364,410.

In respect to the second case, the Meadowdale property is a grocery warehousing and distributing center with necessary office space. Plaintiff, on appeal, appraised the market value of this property at $2,250,000. The city of Detroit made an assessment of $2,085,570; and this assessment was affirmed by the city's board of review.

Upon appeal, the State tax commission, after a full investigation and hearing, found that:

"The commission staff's method of valuation consisted of an appraisal based upon the reproduction cost approach to value which resulted in a current building reproduction value new of $4,787,354 to

---

[1] "Taxable property, both real and personal, in the city of Detroit are assessed at a significant range of from 41% to 56% of their true cash value, or a properly weighted mathematical average for the local unit of 45.25%, which is sustained by an equalization study made by the commission in 1963, which data has been kept routinely current by the commission and checked in the field by the commission's staff."

The same weighted mathematical average was used as to the properties involved in the three appeals.

which various depreciation and obsolescence factors were applied to arrive at a current adjusted reproduction cost for the building of $3,609,837. Land improvements consisting of concrete paving, brick wall, railroad tracks, storage tanks and miscellaneous yard improvements were appraised for a current reproduction value new of $46,997 to which various depreciation and obsolescence factors were applied to arrive at a current adjusted reproduction cost of $35,248. These values were arrived at by use of the Michigan State tax commission manual and the Marshall Stevens valuation service manual along with commonly accepted appraisal techniques. Land was appraised by comparison to similar properties which have sold recently resulting in a current true cash value of $280,590. The total current true cash value of land, land improvements and buildings is $3,925,675.   *   *   *

"After these findings of facts and the consideration of all the information contained therein, it is determined, in the opinion of the commission, that the true cash value is $3,925,675 and the assessment level is 45.25% of true cash value. Therefore, appellant's assessment should be $2,085,570.[2] Since appellant's assessment is $1,776,370, it is clearly apparent that the assessment is significantly above and is not in accordance to the true cash value, reduced to the local assessment level and the true cash value of all other real and personal property within the city of Detroit, reduced to such assessment level."

Accordingly, the State tax commission ordered the assessment reduced to $1,776,370.

The third case involves two parcels of land which are designated by us for the purpose of clarity as parcel "A" and parcel "B".

Parcel "A", located at Greenfield and Fullerton, consists of real property and various structures for

[2] It is apparent that the State tax commission in this order transposed this figure with the following figure of $1,776,370.

light industrial storage and office use. The market value was appraised by plaintiff's real estate department at $253,600. The city of Detroit made an assessment of $371,610, and this figure was affirmed by the city's board of review.

On appeal, the State tax commission made the following findings of fact:

"The commission staff's method of valuation consists of an appraisal using the reproduction cost approach to value which resulted in a current building reproduction value new of $1,968,000 to which various depreciation and obsolescence factors were applied to arrive at a current adjusted reproduction cost of $467,498. Land improvements were appraised at an adjusted current true cash value of $11,356. These values were arrived at by use of the Marshall Stevens valuation service manual along with commonly accepted appraisal techniques. The land was appraised by comparison to similar properties which have sold recently resulting in a true cash value of $115,394. The current true cash value of land, land improvements and buildings is $594,248 based upon the reproduction cost approach to value. The commission staff did an additional appraisal based upon a capitalization of income approach to value which resulted in a current true cash value of $582,138 which appraisal is reasonably close to and substantiates the reproduction cost appraisal. * * *

"After these findings of facts and the consideration of all the information contained therein, it is determined, in the opinion of the commission, that the true cash value is $594,248 and the assessment level is 45.25% of true cash value. Therefore, appellant's assessment should be $268,900. Since appellant's assessment is $371,610, it is clearly apparent that the assessment is significantly above and is not in accordance to the true cash value, reduced to the local assessment level and the true cash value of all other real and personal property within

the city of Detroit, reduced to such assessment level."

Pursuant to its findings, the State tax commission ordered the assessment reduced to $268,900.

Parcel "B", located at Greenfield and Fullerton, is a paved parking lot used in connection with parcel "A". The city of Detroit made an assessment of $12,410; and this assessment was affirmed by the city's board of review.

The State tax commission, on appeal, found that:

"The vacant land involved in this appeal was appraised by the commission's staff by comparison to similar properties which have sold recently resulting in a current true cash value of $24,818. * * *

"After these findings of facts and the consideration of all the information contained therein, it is determined, in the opinion of the commission, that the true cash value is $24,818 and the assessment level is 45.25% of true cash value. Therefore, appellant's assessment should be $11,230. Since appellant's assessment is $12,410, it is clearly apparent that the assessment is significantly above and is not in accordance to the true cash value, reduced to the local assessment level and the true cash value of all other real and personal property within the city of Detroit, reduced to such assessment level."

Pursuant to its findings, the State tax commission ordered the assessment reduced to $11,230.

Allied filed applications for leave to appeal to the Court of Appeals in each of these cases. The Court of Appeals denied leave on May 9, 1967, by order which stated as the reason for its denial, "that it does not appear that fraud, error of law or the adoption of wrong principles were present in the decision below."

Application for rehearing was denied on June 27, 1967. Allied is here on leave granted by this Court by order dated May 13, 1968.   380 Mich 768.

Plaintiff alleges error on the part of the State tax commission in three respects:

1. That the State tax commission based its determination of fair market value of the properties on arbitrary and artificial estimates of cost of reproduction which were totally unrelated to the fair market value of the property;

2. The State tax commission's findings as to the fair market value of the properties are unsupported by the "competent, material and substantial evidence on the whole record" (Const 1963, art 6, § 28);

3. The State tax commission's findings are clearly contrary to the overwhelming weight of the evidence.

The arguments presented by plaintiff—that the State tax commission's reproduction cost approach to value is arbitrary and artificial because it is totally unrelated to the fair market value of the property—are the same arguments made to this Court in *Fisher-New Center Company* v. *State Tax Commission* (1968), 380 Mich 340, and *Pantlind Hotel Company* v. *State Tax Commission* (1968), 380 Mich 390.[3]

In *Fisher-New Center* and *Pantlind Hotel, supra,* as well as in the instant cases, plaintiffs have consistently argued that both by constitutional mandate (Const 1963, art 9, § 3) and by statutory enactment (CL 1948, § 211.24, as amended by PA 1963, No 66 [Stat Ann 1969 Cum Supp § 7.24]), property must be assessed on the basis of its "true cash value."

Plaintiff also contends that "true cash value" has been defined by this Court as "the fair market value" and by statute as "the price which could be obtained therefor at private sale, but not at forced or auction sale."

---

[3] These cases are presently before this Court for rehearing by order dated May 6, 1968. (Decisions on rehearing in these cases, decided May 5, 1969, are set forth at 381 Mich 713 and 381 Mich 717.—Reporter.)

Justice ADAMS, writing for a majority of the Court in *Fisher-New Center Company* v. *State Tax Commission, supra,* discussed "true cash value" as follows (pp 361, 362, 363):

"All methods used to determine true cash value involve the exercise of judgment or decision-making. While it may seem that a sale which has occurred definitely fixes market price so as almost indisputably to determine true cash value, this is not necessarily the case, particularly if the property is unique and if there have been few sales. The testimony in this case shows that a great many considerations enter into the determination of sales price—need of or ability to utilize the property, the calculation of potential income, actual income, age and physical condition, possible tax benefits or detriments, cost of money, and so on. Sales price, particularly a single sales price, is only one index of true cash value. [Citing cases.] In *Davidson* v. *City of Lansing* (1959), 356 Mich 697, 700, Justice KELLY wrote for a unanimous Court:

" 'The sale price paid by appellants was an item to be considered by the assessor, but is not of and by itself controlling.'

"If reproduction or replacement cost is used as the test, we are again met by uncertainties. No reconstruction or replacement of the property is contemplated. Consequently, pricing by competitive bids is lacking. Costs are often related to those of other structures thought to be within the same building-type classification. After a figure for cost has been selected, the next step is to determine the amount to be allowed for depreciation and for obsolescence, if any. Allowances for depreciation normally bear a relation to the remaining useful life of the building at the time of its construction. What the assigned useful life of a building should be may prove a debatable question. Two types of obsolescence may be considered by the assessor: functional obsolescence and economic obsolescence. The first

covers loss of value due to inherent deficiencies within the property. The second is loss of value occasioned by outside forces. The measure of allowable obsolescence becomes a subjective determination. It can vary widely in the minds of individual assessors. All of these decisions, where the reproduction or replacement cost method is used, demand the exercise of judgment.

"Finally, the capitalization of income method will produce different results depending upon such decisions as whether to use actual income or projected income, the amount and make-up of the capitalization rate, et cetera.  *  *  *

"A shift of 1% either way would produce considerable variation in value, as will be seen hereafter.

"*True cash value should be based upon one or more of the recognized methods for its determination. The method or methods to be used is a matter for decision at the assessing level and, if supported by the record, will not be subject to judicial review. Review will be limited to 'fraud, error of law or the adoption of wrong principles.'* In these assessment decisions, three levels of determination—(1) by the assessor, (2) by the board of review, and (3) by the State tax commission—must ordinarily suffice." (Emphasis added.)

Plaintiff is in error in attempting to equate "fair market value" with "true cash value." Admittedly, in some instances fair market value and true cash value might be the same. However, "fair market value" is not conclusively determinative of "true cash value." It is but one method of arriving at "true cash value." See *Fisher-New Center Co.* v. *State Tax Commission, supra.* The choice of the method or methods to be used is a matter for discretion at the assessing level.

An examination of the record in the instant case discloses that with reference to each of the proper-

ties, one or more—and in some instances all three—methods of computing true cash value were used by the State tax commission. There is no merit to plaintiff's contention that the State tax commission based its determination of the true cash value of the properties on arbitrary and artificial estimates of cost of reproduction. The record supports the fact that all three commonly accepted methods were used in arriving at the "true cash value."

Plaintiff's second contention alleges that the findings of the State tax commission are unsupported by "competent, material and substantial evidence on the whole record." Apparently, plaintiff would have the testimony of its real estate expert and his computation based upon capitalization of income as the only competent evidence in the record. This is the consequence of plaintiff's attempt to equate "fair market value" and "true cash value."

The record discloses that the State tax commission determined the true cash value of plaintiff's property by the use of actual reproduction cost less a deduction for depreciation and functional obsolescence. No allowance for extraordinary functional or economic obsolescence was applied in the case of the Harrington and Meadowdale warehouses. In the case of the Fullerton property, an economic obsolescence of 10% was allowed in addition to the normal allowance for depreciation and functional obsolescence due to age. The values thus arrived at were verified by use of the capitalization of the normal income of the properties. This method substantiated the true cash value arrived at by the adjusted reproduction cost method. All were within the methods of computation of "true cash value" set out by Justice ADAMS in *Fisher-New Center, supra.* In addition, where the particular property had similar sales in the area, they used the comparable sales test.

The conclusion the State tax commission reached after hearing all the evidence is supported by the record. Plaintiff has not demonstrated errors of law or the application of wrong principles, nor has it shown the State tax commission's findings to be unsupported by "competent, material and substantial evidence on the whole record."

Lastly, it is the contention of plaintiff that the State tax commission's findings are clearly contrary to the overwhelming weight of the evidence. Here, again, plaintiff relies upon its expert witness as being the only witness in the case who qualified as an expert on real estate valuations. Plaintiff's contention appears to be that since its witness is a real estate expert, the State tax commission is bound by his testimony. The expert witness testified that there are basically three methods of valuing property, but that not all of these methods are usable in a particular situation. He ruled out the reproduction cost method in the instant case because of the age and substantial functional and economic obsolescence of the properties. He testified that only when it was economically feasible to substitute an existing property does a valuation by use of reproduction cost become representative of its fair market value. He also ruled out the comparable sales method because there were no adequate records of sales of comparable properties. Consequently, the only sound method of appraisal of these properties, in his opinion, was by capitalization of income.

In addition to testimony by plaintiff's real estate expert, there was testimony by assessors for the city of Detroit, who gave their opinions of the "true cash value" of the properties. Staff members and field examiners of the State tax commission also placed in evidence their opinions and reports of their computation of "true cash value."

Plaintiff contends that its cross-examination clearly revealed the field examiner for the State tax commission lacked qualifications as a real estate expert and, therefore, that his testimony should be entirely disregarded. Plaintiff makes this contention despite the fact that the field examiner served for some period of years in evaluating industrial property throughout the State of Michigan and despite the testimony of the field examiner that he used the three accepted methods of computation in arriving at the true cash value of the properties. As a matter of fact, he used the same Ellwood tables in computing the capitalization of income valuation as did plaintiff's expert witness and the use of the tables substantiated the value placed upon the properties by the other methods.

Acceptance of plaintiff's contentions would compel this Court to substitute its judgment of the facts for the judgment of the State tax commission. This we have no right to do except where there are shown fraud, errors of law, or the application of wrong principles. See Const 1963, art 6, § 28, which reads in part:

"In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation."

This Court has repeatedly held that it was foreclosed from judicial review of tax assessments except under the above constitutional provision, which permits review where the action taken is challenged on the grounds of fraud, errors of law, or the adoption of wrong principles. This doctrine has been described as the "finality rule." See *Newport Mining Co.* v. *City of Ironwood* (1915), 185 Mich 668; *Moran* v. *Grosse Pointe Township* (1947), 317 Mich

248; *Kingsford Chemical Company* v. *City of Kingsford* (1956), 347 Mich 91; *Pavilion Apartments, Inc.,* v. *State Tax Commission* (1964), 373 Mich 601.

No amount of time, or number of rehearings, or change in political philosophy of the members of this Court, can or should change this rule. Change should come only by constitutional amendment.

The constitutional provision above quoted is based in part upon the following reasoning:

First, the decision-making process for tax assessment cases is basically an annual one and subject to change from year to year. Although the taxpayer's rights must be zealously guarded, the decision-making process must have sufficient flexibility to realistically reflect changing economic factors, both on the local and State levels. The sovereign's power of taxation cannot be permanently fixed by past tax decisions and policies. This, of course, is quite unlike the procedure in judicial matters where, once a case has been tried, decided, and afforded appellate review, it becomes a final adjudication.

Second, governments—both local and State—need a definite and fixed sum of revenue to budget present and anticipated plans and programs and to meet current fiscal obligations. The time-consuming administrative procedures review of assessments is inimical to and incompatible with this compelling public need for continuity of services, which of necessity relies upon and must be paid from a definite sum of tax revenues.

This practical operation of government finance was expressly recognized even before the effective date of the constitutional provision here under consideration. See the opinion of Justice Kelly in *Dossin's Food Products, Inc.,* v. *State Tax Commission* (1960), 360 Mich 312.

It is basically because of the annual decision-making process and because of the need of the gov-

ernmental units to be reasonably assured of their tax revenues, that the finality rule evolved. These factors were clearly recognized by the delegates to the 1963 Michigan constitutional convention, as is revealed by their debates. The process whereby the provision under consideration became part of our Constitution was well set out by Justice ADAMS in *Fisher-New Center Company* v. *State Tax Commission, supra,* at p 352, in the following footnote:

"Section 28 of article 6, Constitution of 1963, originated in the constitutional convention as committee proposal 95. 1 Official Record, Constitutional Convention 1961, p 1440. What is now the last paragraph of this section did not appear in the original text. It was proposed as an amendment at the time that the complete revision of the proposed new Constitution was being considered by the convention on third reading. 2 Official Record, p 3136. At the time the amendment was offered in convention, Delegate Brake, one of its co-authors, gave the following explanation: 'If we are to permit any taxpayer who is not satisfied with the decision of the State tax commission as to the value of his property to go into court, we are going to need more courts. It has always been the fixed policy that a court will never substitute its judgment on the value of property for the judgment of the assessor. In order to get into court we have had to be able to show fraud or bad faith or that the assessment was illegal. * * * It just simply won't work to allow an appeal to court, when no fraud is involved, from a decision on the basis of what is the value of certain property.' 2 Official Record, p 3136. At that time, the proposed amendment was defeated. 2 Official Record, p 3138. It was again proposed three days later in a revised form. 2 Official Record, p 3240. On this occasion, Delegate Brake said: 'Never, never in the world can we have a judge substitute his opinion for the opinion of the assessors and have

tax machinery that you can live with. Now, when
there is a matter of bad faith, when there is a matter
of fraud, an illegal tax, the remedy in the court is
ready any time. You always can get in court on
those things.' Speaking to the same amendment,
Delegate Allen, also a co-author, said: *'All we're
trying to do in this is to say that on State tax com-
mission matters we preserve all the rights that al-
ready exist but we are not going to go further and
allow the court to substitute its judgment and be-
come an assessor.'* 2 Official Record, p 3241. The
amendment was adopted. 2 Official Record, p 3242."
(Emphasis added.)

The intent of this constitutional provision—as
fairly expressed by Delegate Allen, one of its co-
authors—is that we must preserve and protect all
of the rights of the State tax commission which pre-
viously existed, but we cannot go any further and
allow a court to substitute its judgment and become
an assessor.

We must re-assert and emphasize the warning of
Delegate Brake—the other co-author of the consti-
tutional provision—that the municipal tax machin-
ery cannot, and should not by its very nature, be
clogged with the inappropriate tools of "administra-
tive procedures review." To superimpose such a
form of review, as provided by the administrative
procedures act, will bring the entire tax machinery,
both municipal and State, to a grinding halt.

Given the clear intent of the delegates to the con-
stitutional convention and the delicate nature of the
tax machine, we should not, as a matter of policy,
and cannot, as a matter of constitutional law, permit
any review of tax assessments absent a showing of
fraud, error of law, or the adoption of wrong prin-
ciples.

No fraud being claimed, and this Court finding no
such error of law or application of wrong principles,

we should affirm the assessments determined by the
State tax commission. Defendant Michigan State
tax commission should have costs.

. ADAMS, J., concurred with T. M. KAVANAGH, J.

DETHMERS, J.    The opinion of Mr. Justice
THOMAS M. KAVANAGH adequately states the facts.
in this case and the questions raised by plaintiff on
this appeal. I disagree with its result.

Appeal was allowed in this Court in the instant
case at about the same time that rehearings were
granted in *Fisher-New Center Company* v. *State
Tax Commission* (1968), 380 Mich 340, and *Pantlind
Hotel Company* v. *State Tax Commission* (1968),
380 Mich 390, the .order directing that the three
should be submitted, presented, and argued at the
same time. This was for good reason, because the
records and proceedings below in all three cases are
of a kind and make up the same ball of wax. For
that reason Justice T. M. KAVANAGH, in his opinion,
was warranted in undertaking to dispose of this
case by reliance on the majority opinion of this
Court on the original hearing of *Fisher-New Center
Company*. By the same token, I would dispose of
it, to the opposite effect, by reliance on the opinion
written by Mr. Justice SOURIS in that case.

With respect to the constitutional[1] and statutory[2]
mandate that property be assessed for taxation pur-
poses at "true cash value" and in answer to Justice
T. M. KAVANAGH's statement that the appellant is in
error in attempting to equate "fair market value"
as "true cash value" and that this has led appellant
to a mistake in its contention that the State tax com-
mission's findings are unsupported by competent,

---

[1] Const 1963, art 9, § 3.
[2] CL 1948, § 211.24, as amended by PA 1963, No 66 (Stat Ann
1969 Cum Supp § 7.24).

material, and substantial evidence, it would be well to quote from *Helin* v. *Grosse Pointe Township,* 329 Mich 396, the following:

"As stated in *Moran* v. *Grosse Pointe Township* (1947), 317 Mich 248, 254, the words 'cash value' as defined by CL 1929, § 3415 (CL 1948, § 211.27 [Stat Ann 1950 Rev § 7.27]), is the usual selling price that could be obtained at the time of assessment, but not the price that could be obtained at a forced or auction sale. See, also, *Twenty-Two Charlotte, Inc.,* v. *City of Detroit* (1940), 294 Mich 275, 283."

For reasons stated in Mr. Justice SOURIS' opinions in *Fisher-New Center Company* and *Pantlind Hotel Company* and my own on the rehearings[3] in both, I would reverse and remand for rehearing before the State tax commission and recomputing the valuation and assessment of plaintiff's property within the range of the competent testimony in accordance with the hearing procedures set forth in the mentioned SOURIS opinions, including the administrative procedures act.[4]

Costs to plaintiff.

T. E. BRENNAN, C. J., and KELLY, and BLACK, JJ., concurred with DETHMERS, J.

T. G. KAVANAGH, J., took no part in the decision of this case.

---

[3] Opinions appear *post* at pages 713 and 717 respectively.
[4] CLS 1961, § 24.101 *et seq.* (Stat Ann 1961 Rev § 3.560[1] *et seq.*).—REPORTER.