CONSUMERS POWER COMPANY v PORT SHELDON TOWNSHIP

Docket No. 78-589. Submitted November 2, 1978, at Lansing.—Decided July 9, 1979.

Plaintiff, Consumers Power Company, owns the James H. Campbell Electric Generating Plant located in defendant Port Sheldon Township. The State Tax Commission appraised that facility for the purpose of tax assessments for the years 1975, 1976, and 1977 utilizing the current reproduction cost less depreciation method of valuation. The commission's method of valuation resulted in much higher values for the facility than the values determined by plaintiff utilizing either a capitalized earning approach or an original cost less depreciation and economic obsolescence approach. Plaintiff appealed to the Michigan Tax Tribunal, which adopted the Tax Commission's method of valuation. Plaintiff appeals as of right arguing that the Tax Tribunal adopted "wrong principles" by relying exclusively on a depreciated current reproduction cost approach to value the facility. *Held:*

1. The Court of Appeals, in the absence of fraud, an error of law or the adoption of wrong principles, cannot substitute its judgment on matters of valuation for that of the Michigan Tax Tribunal.

2. Rejection by the Michigan Tax Tribunal of the "unit valuation", or capitalized earning, method of determining the true cash value of an electric power generating plant does not constitute the adoption of wrong principles, since there is no uniform method to allocate income from the entire generating system to an individual generating plant.

3. The current reproduction cost less depreciation method of valuation is properly used to assess, for tax purposes, an electric power generating plant, rather than using the original cost less depreciation and economic obsolescence caused by rate

REFERENCES FOR POINTS IN HEADNOTES
[1] 2 Am Jur 2d, Administrative Law § 675.
[2] 71 Am Jur 2d, State and Local Taxation § 441.
[3] 72 Am Jur 2d, State and Local Taxation §§ 765-767.

regulation method of valuation, since the Legislature has expressed an intent to reject the depreciated original cost method of valuation for tax assessment purposes, and there is no uniform method to allocate economic obsolescence over the entire power generating system.

Affirmed.

1. APPEAL AND ERROR — TAXATION — TAX TRIBUNAL — STANDARD OF REVIEW.

The Court of Appeals, in the absence of fraud, an error of law or the adoption of wrong principles, cannot substitute its own judgment on matters of valuation in appeals from decisions of the Michigan Tax Tribunal.

2. TAXATION — TAX TRIBUNAL — TRUE CASH VALUE — ELECTRIC POWER GENERATING PLANT — "UNIT VALUATION" — WRONG PRINCIPLES.

Rejection by the Michigan Tax Tribunal of the "unit valuation", or capitalized earning, method of determining the true cash value of an electric power generating plant does not constitute the adoption of wrong principles, since there is no state-wide uniform method to allocate income from the entire generating system to an individual generating plant.

3. TAXATION — ASSESSMENTS — METHOD OF ASSESSMENT — ELECTRIC POWER GENERATING PLANT.

The current reproduction cost less depreciation method of valuation for tax assessment purposes, rather than the original cost less depreciation and economic obsolescence caused by rate regulation method of valuation, is properly used to assess the value of an electric power generating plant, since the Legislature has expressed an intent to reject the depreciated original cost method of valuation for tax assessment purposes, and there is no uniform method to allocate economic obsolescence over the entire power generating system.

*Lawrence B. Lindemer, Allen B. Bass, Robert J. Bayers* and *Travis, Warren, Nayer & Burgoyne, P.C.* (by *Bert Burgoyne* and *Richard F. Rosow)*, for plaintiff.

*Bauckham, Reed, Lang, Schaefer & Travis,* for defendant.

Before: M. J. KELLY, P.J., and J. H. GILLIS and M. F. CAVANAGH, JJ.

M. F. CAVANAGH, J. Plaintiff appeals as of right from the Michigan Tax Tribunal's decision to adopt the State Tax Commission's appraisal of plaintiff's James H. Campbell Electric Generating Plant, Port Sheldon Township, Ottawa County, for assessment purposes for tax years 1975, 1976 and 1977.

On appeal, the parties focus entirely upon the proper method to be used in valuating the subject property for the above tax years. Plaintiff's expert considered two methods to arrive at the true cash value of the Campbell facility—a unit valuation, in which earnings of the entire system are first capitalized, and then a portion of those capitalized earnings is allocated to the power plant as its value; and a cost approach, based on original cost of the facility less accrued depreciation and less the economic obsolescence caused by rate regulation. These approaches resulted in the following values for assessment:

| 1975: | $40,063,000 |
| 1976: | $49,910,000 |
| 1977: | $61,500,000 |

The State Tax Commission appraisal adopted a valuation method using the *current* reproduction cost of the Campbell plant less depreciation, which resulted in substantially higher appraisals for the same period, as follows:

| 1975: | $ 93,467,000 |
| 1976: | $105,719,000 |
| 1977: | $116,788,000 |

The commission's expert testified that he considered but rejected a unit valuation based on capitalized earnings on the grounds that the choice of the allocation factor presented innumerable practical problems when assessing power companies on a local basis.

In its opinion adopting the valuation of the Campbell facility determined by the State Tax Commission, the Michigan Tax Tribunal also indicated its concern with the practical problems of fairly and uniformly allocating an accurate portion of the capitalized earnings among the various power plants in the Consumers Power system, as well as with allocation of economic obsolescence created by rate-making done on a statewide basis. Plaintiff appeals from this adverse decision, arguing that the Tax Tribunal has adopted "wrong principles" by relying exclusively on a depreciated current reproduction cost approach to value the plaintiff's plant.

All assessments for *ad valorem* property taxes must be based on a proportion of the property's "true cash value". 1963 Const, art 9, § 3. MCL 211.27; MSA 7.27 defines "true cash value" as:

"the usual selling price at the place where the property to which the term is applied shall be at the time of assessment, being the price which could be obtained for the property at private sale, and not at forced or auction sale. * * * the value attributed to the property of regulated public utilities by any governmental regulatory agency for rate making purposes, shall not be considered as controlling evidence of true cash value for assessment purposes. In determining the value the assessor shall also consider the advantages and disadvantages of location, quality of soil, zoning, existing use, [and] present economic income of structures."

Because the concepts of " 'true cash value' and 'fair market value' are synonymous", *CAF Investment Co v State Tax Comm,* 392 Mich 442, 450; 221 NW2d 588 (1974), the usual appraisal method is to posit a hypothetical market to value the property from both a buyer's and a seller's points of view in order to arrive at a usual sales price. A number of valuation methods, in addition to actual selling price, may legitimately be used to establish the "fair market value" of the property. It is the duty of the Tax Tribunal to weigh the values produced from the various valuation methods and to adopt the method that approaches true cash value most closely on "a cosmic scale of truth". This weighing process involves a considerable amount of judgment and reasonable approximation. *Consumers Power Co v Big Prairie Twp,* 81 Mich App 120, 131; 265 NW2d 182 (1978).

Finally, we reiterate that the scope of review in property tax cases is limited by Const 1963, art 6, § 28, which prevents a court from substituting its own judgment in matters of valuation for that of the agency charged with administering property tax laws, in the absence of fraud, an error of law, or, as alleged here, the adoption of wrong principles by the agency. *Pantlind Hotel Co v State Tax Comm,* 3 Mich App 170, 176; 141 NW2d 699 (1966), *aff'd* 380 Mich 390; 157 NW2d 293 (1968).

With these principles in mind, we turn to the merits of this controversy. The dispute in the instant case centers on which valuation method is most properly utilized to assess an electric generating plant which is an integral part of an entire energy-producing system. Plaintiff contends primarily that a "unit valuation", based on the capitalized earnings of the entire system, achieves the

best approximation of the plant's value. This approach rests on the theory that the primary purpose of a utility system like Consumers Power is to earn a return, that is "income", on the investment in its various generating plants, distribution lines and other operating components. Plaintiff argues that, because an individual power plant has little value apart from its contribution to the system's output expressed in terms of earnings, a plant's value for property tax purposes should be synonymous with the portion of the system's total earnings allocable to it. According to plaintiff's methods, this value is derived by applying an allocation multiplier, based on the original cost in the individual plant divided by the original cost of the entire system, to the system's capitalized earnings. In support of this sytem income approach, plaintiff cites *CAF Investment Co v State Tax Comm, supra,* and *Detroit v Detroit & Canada Tunnel Co,* 92 F2d 833 (CA 6, 1937), as well as a number of cases from foreign jurisdictions.

We recognize that a company may be valued as a "unit", based on its capitalized earnings. This income approach to property valuation has been approved by the Michigan Supreme Court, *CAF Investment Co v State Tax Comm, supra.* Defendant's appraisal expert also testified that he normally considered income, among other indicators of value, when appraising utilities such as telephone companies and railroads, and admitted that little difference in valuation theory appeared between these utilities and a state-wide electric company. He further stated, in connection with the above utilities, that reasonable allocation factors may be developed to separate out the Michigan value for those doing business interstate. Plaintiff thus contends that the same approach may equally

be employed in valuing a power generating system.

In Michigan, however, the unit method is used to value only those public utility properties which by statute must be centrally assessed. These include telephone, telegraph and rail companies assessed by the State Board of Assessors. MCL 207.4; MSA 7.254. Mineral properties are likewise centrally assessed by the State Geologist. MCL 211.24; MSA 7.24. These central assessment provisions do not include power generating public utilities, which thus remain under local assessment. MCL 211.3, 211.10; MSA 7.3, 7.10. In addition to authorizing central assessment by one assessing authority, the Legislature has also established uniform guidelines and allocation techniques applicable to all properties assessed under the above provisions. MCL 207.9, 207.275; MSA 7.259, 13.158(5).

By contrast, no statutory authority exists to permit local assessing officers to assess property located outside their individual districts, nor is there a state-wide uniform method to allocate income from a power-generating system to an individual plant.

Given the present property tax structure and the risk of arbitrariness in the allocation of a power system's value among its various components, we are unable to conclude that the Michigan Tax Tribunal adopted wrong principles in declining to apply the unit valuation method in assessing plaintiff's property.

*Detroit v Detroit & Canada Tunnel Co, supra,* is distinguishable from the case at bar; in the former case only one assessing unit was involved, unlike the present case where the plaintiff presumably has generating facilities in many townships, cities and villages. Nor is the holding in *CAF Invest-*

*ment Co v State Tax Comm, supra,* an unqualified endorsement of the income approach to valuation. The opinion indicates that the income approach may be rejected as too speculative in certain circumstances. It also reaffirms the proposition that:

"Any method for determination of true cash value which is recognized as accurate and reasonably related to fair market valuation will fill the statutory prescription and is an acceptable indicator of true cash value." *CAF Investment Co v State Tax Comm, supra,* at 450, fn 2, 456.

Under the circumstances presented by this case, the adjusted current reproduction cost method employed by defendants meets the above criterion.

The plaintiff also argues that, if a cost approach is used to value the Campbell plant, the valuation must be based on the depreciated *original* cost of the plant, which is the basis on which Consumers Power must set its rates and thus earn its return, less the economic obsolescence (*i.e.,* the deficiency in earnings) caused by rate regulation.

However, several considerations undermine plaintiff's argument. First, this Court has recognized a distinction between the value of property for rate-making purposes and *ad valorem* property tax purposes. *Consumers Power Co v Big Prairie Twp, supra,* at 137. Secondly, the Legislature recently amended MCL 211.27; MSA 7.27, to provide that:

"[t]he value attributed to the property of regulated public utilities by any governmental regulatory agency for rate making purposes, shall not be considered as controlling evidence of true cash value for assessment purposes."

Although the statute took effect after the tax

years in question, its express language indicates a legislative intent to reject assessments based on the depreciated original cost of public utility property, thus undermining plaintiff's basis for calculating economic obsolescence. Furthermore, while rate regulation may indeed contribute to economic obsolescence, a multitude of other factors, including management inefficiency, may create an earnings deficiency. Indeed, it appears that Consumers Power failed to earn for the tax years in question its authorized rate of return. To totally attribute an earnings shortfall to government regulation appears exaggerated. Finally, similar allocation problems appear to exist with this cost method as with the income approach, in light of the fact that rate-making is also done on a system-wide basis, and the economic obsolescence it presumably creates affects the total system's earnings.

The decision of the Michigan Tax Tribunal is therefore affirmed.